Appeal No. 23-2788 All right, we have here approaching Ms. Hall Good morning, I may it please the court. My name is Patricia Hall and my colleague Joel Huatari and I represent Northwestern Illinois Area Agency on Aging, or NIA as I'll refer to them this morning for ease. This case, the issue in this case is whether an area agency on aging has a statutory right to due process and carrying out its duties and enforcing its rights as public advocate for older Americans. We submit to the court this morning that Judge Reinhardt's decision to dismiss our amended complaint in the district court in finding that AAA's areas on aging do not have this right was in error. We ask this court to reverse that decision and remand this case back for determination on the merits. Our client is a public advocate, federally designated for older adults in Area 1, comprised of nine Illinois counties representing over 160,000 older Americans. As the statutorily designated public advocate for this vulnerable population, our client has been charged with numerous obligations, duties, and afforded certain rights under federal law. The background of this case concerns actions by the director of the Illinois Department on Aging, from which funding flows from the federal government to our client's agency, which receives over 90% of its funding from the Illinois Department. Acting as public advocate, NIA, in order to protect the rights of individuals as public advocate, ruffled some feathers with the director years ago and after was advised by a department staff member that it was being retaliated against and funding was being withheld. So in following up on that allegation, our client began requesting what it is entitled to request, and that is hearings before the department to challenge funding decisions and policies created by the department. In withholding this funding and not affording NIA a right to hearings to challenge department actions, this has created a huge catastrophic blow, really, to older Americans and a threat to area agencies on aging. My clients believe that this retaliation was carried out at the direction of the former executive director and has been perpetuated and continuously enforced now by current director Basta, who has refused to investigate allegations of withholding without notice, without a hearing, has refused to disclose details about the withholding, and has refused to give NIA multiple hearings on issues that NIA has raised before the department. And then after NIA requested multiple hearings, the department just rewrote the hearing rule in the Illinois Act in order to completely prevent under Illinois law as well, NIA from requesting hearings through the administrative process, except for two very narrow issues. So we're here on de novo review of Judge Reinhardt's decision to dismiss a 10-count complaint. Five of those counts actually addressed by Judge Reinhardt. The other five he did not exercise supplemental jurisdiction over. So our briefs touch on multiple issues, as this court in the past has recognized are very complex with federal funding. So this morning, we would like to focus our attention on Judge Reinhardt's interpretation of the Older Americans Act and his application of the Tlebsky principles to his analysis, and then his discussion of the statute of limitations and his error in dismissing at the motion to dismiss stage those counts for being outside the statute. Can you start there? Yes. Do you have state law authority that says the statute of limitations, that the state court litigation told the statute of limitations to you? So in our brief, and we discuss this in detail, as the court knows, the statute of limitations under 1983 actions is that of the personal injury statute of limitations, so it runs for two years. However, as we've discussed, the actions by the director and the continued effort to deprive NIA of its hearing rights has told that limitations because of the continuing tort doctrine and its intentional effort to skirt these rights that NIA has. So in those cases, it should be cited in our brief, and I'll, oh, yes. Let me clarify. Yes. If we don't agree with none of the continuing tort doctrine, do you have state law authority that the state litigation here told the statute of limitations? Not this morning. Off the top of my head, Judge, no. But I think my colleague may have. He's planning to focus a little bit more on the statute of limitations issue, so when he comes up, he may be able to answer your question on that. I apologize. The complaint filed below centers on the director's continued effort to deprive NIA of its due process rights, and we submit to the court that Judge Reinhardt's interpretation of the statute was incorrect. The statute language is very explicit, and it directs the state to, that the state shall provide a plan in conjunction with AAAs to the federal government to receive this funding. So that is one thing it must do, but in order to have its plan approved, the state agency will afford an opportunity for a hearing upon request in accordance with published procedures to any area agency on aging. So the language in this section of the statute is very specific, that it's a requirement, and it is directed at the area agency on aging. But after Tavesky, where are you seeing the language to create an individual right enforceable for 1983? So the right here is taken in context with the rest of the statute, that as a public advocate, the area agencies on aging, NIA, is required to represent older Americans, it's required to provide these services, it's required to protect these individuals, and in order to do that, it has to enforce certain things through the department in order to receive funding, in order to receive these services that it is able to pass on, and the language here explicitly says that they will get a hearing if they have issues to take up before the department. And so in Tavesky, it's a case very similar to this in certain respects because the Nursing Home Act in that case was very explicit that there's a certain population or a certain group of people that should be protected in that case from these actions by the nursing home right, so they are specifically targeted, specifically discussed, the area agencies on aging are specifically addressed in this statute, they're the ones with the right, and in order to fulfill their obligations, they need to be able to do this, and I see actually, I have a couple minutes, the court in Tavesky discussed how, touching on your question a little bit, that the statute, it doesn't have to be specific to just an individual only to the exclusion of others, it can be this group, the agencies are this group of people, it's this group of people that, or this group of individuals that are getting this funding, and it's never been a requirement that it has to be this one individual or a person as in the older Americans, and if the court could take note, the public advocate role that was designated to area agencies on aging is a very unique role, and it's because this is a vulnerable population of individuals, so you have a department that is supposed to, under federal law, afford a right to due process to these public advocates for older Americans who is refusing to do so, and then rewrites a hearing rule, and when the public advocate requests a hearing on whether this hearing rule comports to a plan that is appropriate under the Older Americans Act, they refuse to do that because the hearing rule excludes the opportunity to do that, and again, in Judge Reinhart's opinion, he finds that Gonzaga is actually appropriate, but in that case, the issues in that case is about institutional policy, and we're looking at practices and benefits to people, rather than this is an actual explicitly stated right, and the court in Tlefsky did look at the language in statutes and discussed statutory interpretation in terms of what does the language actually say. The language in this statute says that the agency, the plan shall provide, the agency will provide an opportunity for a hearing, and when you take that in conjunction with the numerous other provisions requiring NIA to act as public advocate, requiring NIA to do all these things that it can't do unless it's able to enforce certain things through the department, then the intention is that they have this right. That's the amount of time. Thank you. All right, Ms. Chenevert. And you'll have to tell me how to pronounce your name. That was correct. Good morning, and may it please the court. I am Kaitlyn Chenevert, and I represent Defendant Apoli Palabasta. The district court correctly granted defendants motion to dismiss for a variety of reasons. Turning first as a threshold matter to the statute of limitations, the agency's claims here were based on three different petitions that it filed with the department. Two of those petitions, the initial petition and the APS petition, were correctly dismissed as barred by the statute of limitations. Those petitions were filed with the department in 2019. The department issued its responses in 2019, but the initial complaint filed in the district court was not filed until more than two years later in 2022, and so the district court correctly determined that those were discrete denials that the agency could have brought any complaint at that time, and it did not do so until more than two years later. And in fact, clearly the agency knew that it could bring a lawsuit at that time if it needed to. In 2019, it filed its state court action. So again, as a threshold matter, any claims brought based on denials of its initial petition or APS petition were correctly dismissed as barred by the statute of limitations. Of course, they're saying it's a continuing violation, so you want to address that? Yes, there was no continuing violation here. These were discrete denials that happened in 2019. At that time, the agency, if it believed it was harmed, knew that it was harmed and could have brought any kind of section 1983 or other lawsuit at that time. And again, in fact, it did. In 2019, it brought its state court action for mandamus in Illinois State Court, but nonetheless, it then waited more than two years to bring a separate 1983 action in federal court. So consistent with this court's explanation of the continuing violation doctrine in Easterling versus Thurmer, there was no continuing violation here. Turning to the agency's claims brought under Section 3027A5 of the Older Americans Act, the district court correctly determined that that statute does not create a private right of action, so any counts brought alleging violations of that action, or of that act, or subsection of that act, excuse me, were proper. Just so you can organize your time on this, may I just note that my real problem with your case is with 3026F2, the requirement that the agency grant a hearing to the plaintiffs before final denial of funds. Why doesn't that create a private cause of action for the plaintiff? Certainly. So Section 3026A4. No, well, okay, go ahead. Oh, sorry. Go ahead. Well, I didn't mean to interrupt. I should not have interrupted you. No, that's okay. I will get there. I will flip to my outline. The part about... No, please be the master of your own argument. So Section 3026F2, excuse me, where the state agency may withhold funding from an area agency for failing to comply with federal laws. It seems to me that's the soft underbelly of your case, and I just wanted to invite your attention to that. Well, certainly, that statute simply does not appear to have any applicability to the agency's claim here at all. That portion of the Older Americans Act specifies that any funding that's going to be withheld from the area agency, they are entitled to a hearing. However, the agency here has not alleged in its First Amendment complaint, in its pleadings with the district court, or in fact, in its filings with this court, that the unspecified funding that it alleges it was denied was funding that would have otherwise been available to it under the Act. Again, they just have not ever specified that that's the case. So as the district court noted, this kind of unspecified funding from an unknown individual who claims that this was done in retaliation, that's just certainly not enough to create any kind of cause of action here for this statute, which is specifically contemplating funding withheld where it would have otherwise been available under the Act. Suppose there was funding withheld that would otherwise have been available, and it wasn't, and it was withheld. Would there be a private cause of action? Your Honor, I would be happy to submit a supplemental brief, and the reason that I would, or something substantive, supplemental on that, and the reason is because I would like to, I do that Section 3027 itself governs requirements of a state plan in general. I see. And I am not certain where exactly 3026 falls, if that's also concerning state plans in general, or if it has some other category that it falls under. And so at this point, I don't believe I'd have all the full proper analysis to answer the Court's question. Turning back to 3027A, if I might, unless the Court has any other questions on 3026. Turning back to Section 3027A, the Court correctly determined that that section does not create a private right of action under Section 1983. And that's, again, under Tlusty, the United States Supreme Court made clear that Gonzaga sets the standard for determining whether a statute creates a private right of action, and that requires an unambiguously conferred right. That right is simply not found here in Section 3027 for several reasons. First, the full section of 3027 A discusses state plans that the state agency must submit to the federal government, and then all the subsections of 3027 explain the various multiple requirements of the state plan. So the focus of this section is to regulate the state agencies that are charged with developing plans to submit to the federal government. This in turn shows that there is an aggregate rather than an individual focus. The question that this statute concerns here is what entirely must the state plan contain? And additionally, there's no enforceable right of action because Section 3027 D.3 of the statute specifically states that the federal government may withhold funds if the state has failed to comply substantially with any provision of 3027 A. So the fact that there's some room for noncompliance and so long as the state is in substantial compliance, they may continue to receive funds. Also, squarely cuts against finding any kind of enforceability under Section 1983. That's consistent with Gonzaga as well as discussing. Turning next to the plaintiff's procedural due process claims. Again, my reading of the complaint is that procedural due process claims were brought based on denial of their initial petition as well as their APS petition. But again, this court need not reach the procedural due process issue assuming that it agrees that those claims were barred by the statute of limitations. But statute of limitations aside, the district court properly dismissed any procedural due process claim because the agency has not alleged that it had any protected property interest entitling it to due process rights. That there are no property interests found in federal law nor in state law. Turning first to federal law, the agency pointed to a few different sources that it believed created property rights, but none of them in fact do. First, the agency cited to a federal regulation 45 CFR 1321-63. And that regulation explains that funds are to be awarded by a state agency to area agencies according to a formula determined by the state agency. But to the extent the agency's claim is that it believes it is entitled to certain funds, a unilateral expectation of funds is not sufficient in and of itself to create a property interest. To the extent the agency is relying on section 3027A5A to argue that it has a protected property interest, that subsection requires that a state plan include a plan for a hearing upon request in accordance with published procedures. The Illinois Supreme Court in analyzing the initial petition and the APS petitions as part of plaintiff's mandamus action brought in state court has already determined that as a matter of state law, there is no state law requiring the department to give the agency any hearing on its APS or initial petitions. And then again, finally, the section 3027A5 itself does not create a protected property interest because that sets forth a purely procedural rule with no substantive property interest attached to it. So now turning to state law, again, the Illinois Supreme Court squarely addressed this issue with regard to the initial petition and APS petitions in Nyhammer v. Basta. And after analyzing the relevant state statutes as well as the relevant department regulations, determined that there was no state law requiring that the agencies receive a hearing in these matters. And it also analyzed the Illinois and federal constitutions and similarly concluded there was no right to a hearing found there either. Turning next to the agency's allegations that it is, that its right to function as a public advocate has been violated, that any claim regarding, any claims regarding its ability to function as a public advocate were also properly dismissed. The agency pointed to a federal statute defining a public advocate and the requirements of public advocates that in the Supreme Court in Alexander v. Sandoval made clear that a language and a regulation standing on its own cannot create a private right of action without a federal statute where there is a clear indication from Congress that they intend, that Congress intended for the statute and the regulation to be privately enforceable. If the agency meant to argue that in its role as a public advocate it had a right to hearing on its petitions under Illinois law, which is how the agency frames its argument on page 20 of its opening brief, the district court relinquished any state law claims and on appeal the agency has not argued that the district court used its discretion in doing so. Their agency also at one point referenced section 3026A4 as a source of its authority to act as a public advocate. Again, that defines what roles a public advocate should hold, or should do in monitoring, evaluating, and commenting on policies, but that statute says nothing of being entitled to a hearing if it believes that a state plan does not comply with the act. Unless the court has any other questions, we would ask for all these reasons discussed today and those in our brief that this court affirmed. Thank you. Okay, thank you. Okay. Mr. Hotari? Good morning. And apologies if I mispronounced your name. I'm used to it, Judge. Thank you. Good morning, Your Honor. Joel Hotari on behalf of NIA. With respect to your question, Your Honor, about the statute of limitations, all the case law about statutes of limitations that focus upon reasonable knowledge of the harm as the triggering event, talk about what you knew or should have known about the harm and when it occurred, right? So if you apply that standard to the facts of this case, I think you should agree that the statute of limitations should not bar these claims. Why do I say that? Back in 2019, right in the same year that the initial petition were rejected for a hearing, NIA filed a state court case, which included a section 1983 claim. That claim progressed to the appellate court, which held that the department did have an obligation to grant these hearings. After that ruling, the department continued to deny hearings, and at that point, the harm was felt, triggering the running of that statute of limitations. That's one way to read the facts. The other way to read the facts is to note that there were multiple, multiple hearing requests that were denied, and those were all the subject of the complaint that was filed in the district court. So I'll point out to you, the complaint alleged there were denials of hearings on March 1st, 2021, September 3rd, 2021, and April 5th, 2022. All of those denials were within the two-year statute of limitations, and if you accept the allegations of the complaint is true, as Judge Reinhart was obliged to do under Rule 12 standard, then the claims were timely. So we don't believe the statute of limitation argument should prevail, and we believe that the court should be reversed on that score. As you know, the non-moving party under Rule 12 is entitled to a presumption of all reasonable inferences in its favor. As well as a construction of all well-planned facts in its favor, and had Judge Reinhart adhered to those principles, we don't believe that the statute of limitations would have barred those claims. With respect to Justice Ripple's questions about Section 3026, that too, I believe, is worthy of your attention, and I will go back to the rules. I'll cite Tylewski for this principle that says, in interpreting a statute to determine if it confers a right which can serve as a basis for a Section 1983 claim, courts must employ traditional tools of statutory construction. That means that they have to read it in context, the entire statute, and when you do that, it is indisputable that the statute was designed to provide for hearings to AAAs, because AAAs are in this unique position as public advocates for this vulnerable class of the population, seniors. And when you read the statute as a whole, I think the inescapable conclusion is that it's designed to provide for transparency and accountability, and it does that through providing hearings, such that when, for example, COVID hit and the department cut all of the congregate meal program, my client, the AAA, didn't have any opportunity for a hearing to say, hold on, these are vulnerable seniors who aren't getting their meals. Let's talk about this. Let's provide some feedback on this and make sure that we're protecting these folks. By depriving the AAA of these hearings in retaliation for its advocacy, which it is statutorily obliged to provide to this vulnerable population, the department is violating my client's rights, and it's depriving it of its ability to do its job. So I wanted to keep that bigger picture in mind when you're reviewing this stuff. This isn't a case about billions of dollars like the Eli Lilly case you heard this morning. It's about providing hearings. That's all. All my client's asking for is a chance to be heard. And it's a public advocate. It's obliged to speak on behalf of its clients, seniors. And the statute says it gets a hearing. And the facts pled are that that right has been deprived due to some kind of personal vendetta. And that's just not right. And so my client has been bringing this case just to get its day in court. I apologize. I see I'm out of time. Thank you. Thank you, counsel. We'd like to thank both parties, and we will take the appeal under advisement. Thank you.